UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHAEL JONES,

        Petitioner,                             Case Number: 2:06-CV-10497

v.                                            HON. GEORGE CARAM STEEH

KENNETH MCKEE,

        Respondent.
_____/

## OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Petitioner Michael Jones has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner, who is incarcerated at the Ionia Correctional Facility in Ionia, Michigan, challenges his convictions for first-degree murder and possession of a firearm during the commission of a felony. For the reasons set forth below, the Court denies the petition.

**I.**

Petitioner's conviction arises from the shooting death of his ex-girlfriend, Marshell Ruffin (Marshell), in the City of Detroit, on February 11, 1997.

Marshell's son, Kennyatta Ruffin (Kennyatta), testified that he lived with his mother and grandmother on Glenndale Street. Petitioner dated his mother from July 1996 through December 1996. Kennyatta testified that, sometime around Christmas 1996, his mother obtained a personal protection order against Petitioner because he threatened her. On the night of February 11, 1997, he went to bed at around 1:00 a.m., and the doors to the home were locked. His mother and grandmother were already in bed. He was awakened by gunshots at approximately 3:30 a.m. He went to his mother's bedroom where he saw her lying on the floor.

Arlee Ruffin, Marshell's mother, testified that on the night of the shooting she went to bed at approximately 1:00 a.m. She was awakened by gunshots at approximately 5:00 a.m. She saw the front door to the apartment was open and saw someone across the street running from her home. She did not see the suspect's face but testified he had the same stature as Petitioner.

The parties stipulated that Dr. Yung Chung performed the autopsy of Marshell and concluded that she died of multiple, close-range gunshot wounds to the head, face, and chin.

Brenda Suggs, Marshell's sister, testified that, in January 1997, Petitioner threatened to hurt Marshell.

Petitioner's sister Catherine Pernell testified that, during the early morning hours of February 11, 1997, she found out that Marshell had been shot and that her brother was a suspect. Shortly thereafter, Petitioner appeared at her door. He denied killing Marshell.

Petitioner testified in his own defense. He denied ever threatening Marshell or knowing of any personal protection order. He testified that one of Marshell's other boyfriends was assaultive and had shot at Petitioner in October 1996.

## II.

Following a jury trial in Wayne County Circuit Court, Petitioner was convicted of first-degree premeditated murder and possession of a firearm during the commission of a felony. On March 24, 1999, he was sentenced to life imprisonment without parole for the murder conviction, and two-years imprisonment for the felony-firearm conviction.

Petitioner filed an appeal of right in the Michigan Court of Appeals, raising the following claims:

I. Defendant-appellant's conviction should be reversed because there was insufficient evidence to find for the conviction of first degree murder;

2

alternatively, the motion for directed verdict should have been granted.

II. Defendant-appellant's convictions should be reversed because the trial court erred in admitting evidence of prior bad acts, contrary to *People v. Vandervliet*, and if the trial court did not err in their admission, erred by refusing to properly instruct the jury on how to consider these acts.

Petitioner raised the following additional claims through substitute retained counsel:

I. Defendant was denied a fair trial by the prosecutor's tactic of reading verbatim from prior statements of witnesses without laying a proper foundation for admission as past recollection recorded.

II. The required exercise of multiple peremptory challenges for the examination of each newly seated jury was a variant of the "struck jury method" of jury selection which deprived the defendant of the right to due process pursuant to U.S Const. Ams. VI, XIV; and Mich. Const. 1963 art. 1 §17.

III. Defendant's non-parolable mandatory life sentence for first degree murder violates Michigan constitution because it is an indeterminate sentence and because it constitutes cruel or unusual punishment.

The Michigan Court of Appeals affirmed Petitioner's convictions. *People v. Jones*, No. 218919 (Mich. Ct. App. Aug. 28, 2001).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court, raising the following claims:

I. Defendant was denied a fair trial by the prosecutor's tactic of reading verbatim from prior statements of witnesses without laying a proper foundation for admission as past recollection recorded.

II. The required exercise of multiple peremptory challenges for the examination of each newly seated juror was a variant of the "struck jury method" of jury selection which deprived the defendant the right to due process pursuant to U.S. Const Ams. VI, XIV; and Mich. Const. 1963 art 1 §17.

III. Defendant's non-parolable mandatory life sentence for first degree murder violates Michigan constitution because it is an indeterminate sentence and because it constitutes cruel or unusual punishment.

IV. The court of appeal's failure to rule on the merits of defendant's initial appeal brief

filed by the court-appointed counsel deprived the defendant of due process secured under U.S. Const. Ams. VI, XIV; and Mich. Const. 1963 art. 1 §17.

The Michigan Supreme Court denied leave to appeal. *People v. Jones*, 120232 (Mich. March 22, 2002).

Petitioner then filed a motion for relief from judgment in the trial court, raising the following claims:

> I. The prosecution abused its charging authority by wrongfully charging Michael Jones with first-degree murder where probable cause was lacking and where the prosecutor used improper methods calculated to produce a wrongful conviction because there was insufficient evidence proving this case beyond a reasonable doubt in violation of due process.
>
> II. Michael Jones was denied the effective assistance of trial counsel due to counsel's deficient performance and because counsel acted in concert with the police and prosecutor to deny him his right to present a viable and adequate defense under the circumstances thereby constructively denying him effective counsel altogether in violation of due process.
>
> III. Defendant demonstrates both good cause for not being able to raise the within issues in a prior proceeding or on appeal and demonstrates actual prejudice stemming from the irregularities that support his claims for relief in this post-appeal proceeding.

The trial court denied the motion. *People v. Jones*, No. 97-005381 (Wayne County Circuit Court Nov. 19, 2003). Petitioner filed applications for leave to appeal in the Michigan Court of Appeals and Michigan Supreme Court. Both appellate courts denied leave to appeal. *People v. Jones,* No. 257543 (Mich. Ct. App. Apr. 7, 2005); *People v. Jones*, No. 128731 (Mich. Nov. 29, 2005).

Petitioner then filed the pending petition for a writ of habeas corpus, raising the following claims:

> I. The writ must be granted where the evidence of premeditation and deliberation was constitutionally insufficient to support the conviction of first degree murder;

4

alternatively, the motion for a directed verdict should have been granted.

II. Where the trial court erroneously admitted evidence of prior bad acts, contrary to federal law, the writ should be granted; alternatively, the trial court erred by refusing to properly instruct the jury on how to consider these acts.

III. Petitioner was denied a fair trial by the prosecutor's tactic of reading verbatim from prior statements of witnesses without laying a proper foundation for admission as past recollection recorded.

IV. The prosecution abused its charging authority by wrongfully charging petitioner with first degree murder where probable cause was lacking and where the prosecutor used improper methods calculated to produce a wrongful conviction because there was insufficient evidence proving this case beyond a reasonable doubt in violation of due process.

V. Petitioner was denied his Sixth Amendment right to the effective assistance of trial counsel due to counsel's deficient performance, and because counsel acted in concert with the police and prosecution to deny petitioner his right to present a viable and adequate defense under the fourteenth amendment.

VI. Appellate counsel violated Mr. Jones' Fourteenth and Sixth Amendment rights where counsel failed to raise several "significant" and "obvious" issues on his appeal of right, thus resulting in the omission of several "dead bang winners."

**III.**

28 U.S.C. § 2254(d) imposes the following standard of review on federal courts reviewing applications for a writ of habeas corpus:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

28 U.S.C. § 2254(d). Therefore, federal courts are bound by a state court's adjudication of a petitioner's claims unless the state court's decision was contrary to or involved an unreasonable application of clearly established federal law. *Franklin v. Francis*, 144 F.3d 429 (6th Cir. 1998). Additionally, this Court must presume the correctness of state court factual determinations. 28 U.S.C. § 2254(e)(1)[1]; *see also Cremeans v. Chapleau*, 62 F.3d 167, 169 (6th Cir. 1995) ("We give complete deference to state court findings unless they are clearly erroneous").

The United States Supreme Court has explained the proper application of the "contrary to" clause as follows:

> A state-court decision will certainly be contrary to [the Supreme Court's] clearly established precedent if the state court applies a rule that contradicts the governing law set forth in our cases. . . .
>
> A state-court decision will also be contrary to this Court's clearly established precedent if the state court confronts a set of facts that are materially indistinguishable from a decision of this Court and nevertheless arrives at a result different from [the Court's] precedent.

*Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).

With respect to the "unreasonable application" clause of § 2254(d)(1), the United States Supreme Court held that a federal court should analyze a claim for habeas corpus relief under the "unreasonable application" clause when "a state-court decision unreasonably applies the law of this Court to the facts of a prisoner's case." *Id.* at 409. The Court defined "unreasonable application" as follows:

---

[1] 28 U.S.C. § 2254(e)(1) provides, in pertinent part:

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed to be correct.

6

> [A] federal habeas court making the "unreasonable application" inquiry should ask whether the state court's application of clearly established federal law was objectively unreasonable. . .
>
> [A]n unreasonable application of federal law is different from an incorrect application of federal law. . . . Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

*Id.* at 409-11.

### A.

In his first claim for habeas corpus relief, Petitioner argues that the evidence of premeditation and deliberation was constitutionally insufficient to support his conviction for first-degree murder and that the trial court, therefore, erred in denying his motion for a directed verdict.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship,* 397 U.S. 358, 364 (1970). However, the critical inquiry on review of the sufficiency of the evidence to support a criminal conviction is "whether the record evidence could reasonably support a finding of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 318 (1979).

> [T]his inquiry does not require a court to ask itself whether *it* believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

*Id.* at 318-19 (internal citation and footnote omitted). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."

*Id.* at 324 n.16. Normally, pursuant to 28 U.S.C. § 2254(d)(1), this Court must determine whether the state court's application of the *Jackson* standard was contrary to or an unreasonable application of Supreme Court precedent.

The state court of appeals applied this standard in affirming the petitioner's convictions. It held:

> Regarding premeditation and deliberation, these elements may be established by evidence of the prior relationship of the parties, the defendant's actions before the killing, the circumstances surrounding the killing itself, and the defendant's conduct after the murder. Circumstantial evidence and the reasonable inferences arising therefrom, may suffice to establish a defendant's premeditation and deliberation. *People v. Abraham*, 234 Mich. App. 640, 656; 599 N.W.2d 736 (1999). In this case, defendant and the victim had engaged in a romantic relationship that ended acrimoniously shortly before the victim's murder. During the months preceding the murder defendant threatened to kill the victim. The victim's death, which occurred during the early hours of the morning, resulted from several close range gunshots to her face and head. *People v. Berry (on remand)*, 198 Mich. App. 123, 128; 497 N.W.2d 202 (1993). Within twelve hours of the murder, defendant's sister observed a gun in defendant's waistband. The shooter gained entry to the victim's home through locked doors without damaging them. Furthermore, on learning that the police were looking for him, defendant left his sister's home for a friend's residence, where shortly thereafter police apprehended him. We conclude that this evidence amply supported the jury's determination beyond any reasonable doubt that defendant premeditated and deliberated the victim's murder.

*Jones*, slip op. at 1-2.

The Court finds that the state court's thorough and well-reasoned analysis of the offenses in light of the evidence was a proper application of the *Jackson* standard of review. Applying the *Jackson* standard, there is no basis for concluding that Petitioner is entitled to habeas relief on the ground that the state failed to prove his guilt.

**B.**

Petitioner argues that the trial court improperly admitted evidence of prior bad acts and that the trial court also failed to properly instruct the jury as to the proper use of this testimony. Statements contained in a personal protection order obtained by the victim were read into evidence. These statements indicated that Petitioner threatened the victim's life several times, threatened to rape her, and stalked her. The victim's sister testified regarding a threat Petitioner made against the victim approximately one month before the murder.

"Habeas review does not encompass state court rulings on the admission of evidence unless there is a constitutional violation." *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994), *citing Fuson v. Jago*, 773 F.2d 55, 59 (6th Cir. 1985). Only "[w]hen an evidentiary ruling is so egregious that it results in a denial of fundamental fairness," may it violate due process and warrant habeas relief. *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir.2003).

The last state court to issue a reasoned opinion regarding this claim, the Michigan Court of Appeals, held that the testimony was properly admitted. The state court reasoned that the evidence was offered to prove Petitioner's intent and motive to kill the victim. The evidence of Petitioner's prior threats to the victim "plainly tended to establish defendant's motive for killing the victim and prove his intent to kill the victim, both proper purposes." *Jones*, slip op. at 2. In addition, the court of appeals held that any risk of unfair prejudice did not substantially outweigh the evidence's probative value. *Id.*

Based upon all of the factors considered by the Michigan Court of Appeals, the Court finds that the admission of this testimony did not deprive Petitioner of his fundamental right to a fair trial.

9

Petitioner also claims that the trial court failed to give an appropriate instruction cautioning the jury as to the proper use of this other acts testimony. An erroneous jury instruction warrants habeas corpus relief only where the instruction "'so infected the entire trial that the resulting conviction violates due process.'" *Estelle v. McGuire*, 502 U.S. 62, 72 (1991), (quoting *Cupp v. Naughten*, 414 U.S. 141, 147 (1973)). "[I]t must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some [constitutional] right." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). The jury instruction "'may not be judged in artificial isolation,' but must be considered in the context of the instructions as a whole and the trial record." *Estelle*, 502 U.S. at 72 (quoting *Cupp*, 414 U.S. at 147). The court must "inquire 'whether there is a reasonable likelihood that the jury has applied the challenged instruction in a way' that violates the Constitution." *Id*. (quoting *Boyde v. California*, 494 U.S. 370, 380 (1990)).

The Michigan Court of Appeals held that, although the trial court erred in failing to give the requested instruction, "in light of the substantial evidence of defendant's guilt and the cumulative nature of the evidence of threats contained in the protection order and the victim's sister's testimony, we . . . are not convinced that the instructional error resulted in a miscarriage of justice." *Jones*, slip op. at 3. This Court agrees with the trial court's assessment of the jury instructions. While Petitioner may have been entitled to such an instruction under Michigan law, the failure to give the instruction did not deprive him of his fundamental right to a fair trial.

**C.**

In his third claim, Petitioner argues that the trial court admitted hearsay testimony without first requiring a proper foundation to be laid. During questioning of witness Catherine

10

Pernell about a conversation she had with Petitioner, the prosecutor quoted at length from a statement she gave to police without, Petitioner argues, first establishing that Pernell's memory needed refreshing. Similarly, during his questioning of witness Demetric Jones, the prosecutor also quoted at length from a prior statement Demetric gave to police. Petitioner argues that the prosecutor again failed to lay the proper foundation for this testimony.

The Michigan Court of Appeals held that Pernell's statement was properly admitted because her testimony established the foundational elements for the admission of her earlier statements as a past recollection recorded. *Jones*, slip op. at 3. The court of appeals held that the prosecutor failed to establish that Demetric Jones lacked sufficient recollection of the matter or that his prior statement "accurately reflected his knowledge of events occurring the day before the victim's murder." *Id.* The state court nevertheless held that the error was harmless. *Id.* at 304.

Petitioner's state law claim concerning the trial court's admission of "hearsay" testimony is not cognizable on habeas review. *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) ("[F]ederal habeas corpus review does not lie for errors of state law.") (internal quotation omitted). As noted above, "[e]rrors by a state court in the admission of evidence are not cognizable in habeas corpus proceedings unless they so perniciously affect the prosecution of a criminal case as to deny the defendant the fundamental right to a fair trial." *Kelly v. Withrow*, 25 F.3d 363, 370 (6th Cir. 1994).

With regard to the admission of Demetric Jones's testimony, which the state court held was improperly admitted, Petitioner is entitled to habeas relief only if he can show that the evidentiary error so perniciously affected the prosecution of his case that it deprived him of the

11

fundamental right to a fair trial. *See id.* The petitioner has not shown that admitting this testimony deprived him of a fundamentally fair trial. As noted by the state court, Demetric Jones's statement to police contained several statements prejudicial to Petitioner. The state court carefully reviewed the damaging hearsay evidence admitted and weighed that evidence against the untainted evidence presented at trial. Considering the overwhelming strength of the untainted evidence, the state court concluded that Petitioner was not prejudiced by admission of Demetric Jones's statement. The Court finds that the state court's conclusion was not unreasonable and that the admission of Demetric Jones's statement to police was not so fundamentally unfair that it rose to the level of a deprivation of due process. This claim does not entitle the petitioner to habeas relief.

### D.

Respondent argues that Petitioner's remaining claims are barred from federal habeas review because they are procedurally defaulted. The doctrine of procedural default provides:

> In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claims is barred unless the prisoner can demonstrate cause for the default, and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice.

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991). Such a default may occur if the state prisoner files an untimely appeal, *Coleman*, 501 U.S. at 750, if he fails to present an issue to a state appellate court at his only opportunity to do so, *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994), or if he fails to comply with a state procedural rule that required him to have done something at trial to preserve his claimed error for appellate review, e.g., to make a contemporaneous objection, or file a motion for a directed verdict. *United States v. Frady*, 456 U.S. 152, 167-69 (1982);

12

*Simpson v. Sparkman*, 94 F.3d 199, 202 (6th Cir. 1996). Application of the cause and prejudice test may be excused if a petitioner "presents an extraordinary case whereby a constitutional violation resulted in the conviction of one who is actually innocent." *Rust*, 17 F.3d at 162; *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

For the doctrine of procedural default to apply, a firmly established state procedural rule applicable to the petitioner's claim must exist, and the petitioner must have failed to comply with that state procedural rule. *Warner v. United States*, 975 F.2d 1207, 1213-14 (6th Cir. 1992), *cert. denied*, 507 U.S. 932 (1993). Additionally, the last state court from which the petitioner sought review must have invoked the state procedural rule as a basis for its decision to reject review of the petitioner's federal claim. *Coleman*, 501 U.S. at 729-30.

This Court begins its analysis of whether Petitioner's claims are procedurally defaulted by looking to the last reasoned state court judgment denying Petitioner's claims. *See id.* at 729-30. The Michigan Supreme Court, the last state court to address these claims, which were presented for the first time on collateral review, denied leave to appeal because the petitioner "failed to meet the burden of establishing entitlement to relief under M.C.R. 6.508(D)." *People v. Jones*, No. 128731 (Mich. Nov. 29, 2005).

The Sixth Circuit Court of Appeals has held that M.C.R. 6.508(D) is a firmly established and regularly followed state ground precluding subsequent federal habeas review absent a showing of cause and prejudice where the rule was in effect at the time of a petitioner's direct appeal. *Luberda v. Trippett,* 211 F.3d 1004, 1007 (6th Cir. 2000), *citing Rogers v. Howes*, 144 F.3d 990 (6th Cir. 1998). M.C.R. 6.508(D) was enacted in October 1989. Petitioner was convicted in 1999. Thus, M.C.R. 6.508(D) was a firmly established and regularly followed state

procedural bar at the time of Petitioner's convictions and direct appeals. The Sixth Circuit Court of Appeals has also held that even a judgment as brief as the one by which the Michigan Supreme Court denied leave to appeal in this case is sufficient to invoke the doctrine of procedural default. *Ivory v. Jackson*, 509 F.3d 284, 292-93 (6th Cir. 2007); *Simpson v. Jones*, 238 F.3d 399, 408 (6th Cir. 2000). Accordingly, the state court's judgment clearly rested on a procedural bar and the doctrine of procedural default is invoked.

Therefore, this Court may not review Petitioner's claims unless he has established cause for the default and actual prejudice as a result of the alleged violation of federal law or unless he has demonstrated that failure to consider these claims will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750.

Petitioner asserts ineffective assistance of appellate counsel to excuse his default. The Supreme Court has held that "cause" under the cause and prejudice standard must be "something *external* to the petitioner, something that cannot be fairly attributed to him." *Id.* at 753. The Court further held that "[a]ttorney ignorance or inadvertence is not 'cause' because the attorney is the petitioner's agent when acting, or failing to act, in furtherance of the litigation, and the petitioner must 'bear the risk of attorney error' . . . . Attorney error that constitutes ineffective assistance of counsel is cause, however." *Id.* at 753-54 (internal citations omitted).

In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court established a two-pronged test for determining whether a habeas petitioner has received ineffective assistance of counsel. First, a petitioner must prove that counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687. The Supreme Court has "declined to articulate

specific guidelines for appropriate attorney conduct and instead [has] emphasized that '[t]he proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Wiggins v. Smith*, 539 U.S. 510, 520 (2003) (quoting *Strickland*, 466 U.S. at 688; additional internal quotations omitted). However, when assessing counsel's performance, the reviewing court should afford counsel great deference. *Strickland*, 466 U.S. at 689 (observing that "[a] fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time" and that a convicted person who seeks to criticize his attorney's performance "must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy'").

Second, a petitioner must show that counsel's deficient performance prejudiced petitioner. A petitioner may establish prejudice by "showing that counsel's errors were so serious as to deprive the defendant of a fair trial." *Id.*

The Supreme Court has held that a petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). The Court further stated:

> For judges to second-guess reasonable professional judgments and impose on appointed counsel a duty to raise every "colorable" claim suggested by a client would disserve the . . . goal of vigorous and effective advocacy. . . . Nothing in the Constitution or our interpretation of that document requires such a standard.

*Id.* at 754. Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Petitioner claims that the prosecutor engaged in various instances of misconduct, which deprived him of his right to a fair trial and that his appellate attorney was ineffective in failing to raise this issue on appeal. First, Petitioner claims that the prosecutor abused his charging authority by charging Petitioner with first-degree murder in the absence of sufficient evidence to sustain a conviction. As discussed above, the prosecutor presented sufficient evidence to sustain this conviction. Therefore, the prosecutor clearly did not abuse his authority by bringing this charge. Second, Petitioner argues that the prosecutor knowingly presented false testimony, failed to secure exculpatory evidence, and allowed inconsistent testimony to stand uncorrected. Petitioner's allegations in this regard are comprised of conclusory statements, supported by conjecture. The Court finds that Petitioner has failed to show that the prosecutor engaged in misconduct and, therefore, failed to establish that appellate counsel was ineffective in failing to raise this issue on appeal.

Petitioner also argues that his trial attorney was ineffective in failing to investigate, failing to effectively cross-examine and impeach witnesses, failing to challenge the improprieties of the prosecutor and police, waiving the medical examiner's testimony, and failing to present a viable defense.

Petitioner argues that his trial attorney failed to investigate. Petitioner fails to provide adequate support for his conclusory claims that his attorney should have conducted further investigation or pretrial preparation. A conclusory claim, not supported by facts, will not entitle a petitioner to habeas corpus relief. *Lynott v. Story*, 929 F.2d 228, 232 (6th Cir.1991). Accordingly, Petitioner fails to show this attorney was ineffective in this regard.

Petitioner also alleges that counsel failed to effectively cross-examine and impeach

16

witnesses. First, he claims that counsel failed to challenge the inconsistences between Arlee Ruffin's original statement to police and her trial testimony. In fact, a review of the trial testimony shows that counsel effectively cross-examined Ruffin regarding her inability to see the perpetrator's face and the unfavorable circumstances under which she saw the fleeing suspect. In addition, counsel's cross-examination of Pernell and Demetric Jones, while not referencing the statements made in their affidavits executed several years after the trial, was adequate.

Petitioner argues that counsel was also ineffective in failing to present a viable defense. Defense counsel clearly presented a defense of mistaken identification. He articulated this defense to the jury and cross-examined prosecution witnesses regarding their relative ability to view the perpetrator. Petitioner fails to articulate an alternate defense theory that would have been preferable.

As discussed above, Petitioner failed to show that the prosecutor or police engaged in misconduct. Therefore, he cannot establish that his attorney was ineffective in failing to object to challenge their conduct.

Finally, Petitioner fails to show how he was prejudiced by his attorney's waiving the medical examiner's testimony.

Because Petitioner's prosecutorial misconduct and ineffective assistance of counsel claims are without merit, Petitioner cannot show that he was prejudiced by appellate counsel's failure to raise them. Thus, these claims are procedurally defaulted unless the petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *Schlup v. Delo*, 513 U.S. 298 (1995).

The Supreme Court explicitly has tied the miscarriage of justice exception to procedural

default to a petitioner's innocence. *Id.* at 321. Thus, Petitioner must assert a constitutional error along with a claim of innocence. "To be credible, such a claim requires petitioner to support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial." *Id.*

Petitioner has not supported his allegation of constitutional error with new reliable evidence of actual innocence that was not presented to the trial court. Accordingly, these claims are procedurally defaulted.

## IV.

Petitioner has not established that he is in the State of Michigan's custody in violation of the Constitution or laws of the United States.

Accordingly, it is **ORDERED** that the petition for a writ of habeas corpus is **DENIED**.

Dated: July 29, 2008

                                     S/George Caram Steeh
                                     GEORGE CARAM STEEH
                                     UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 29, 2008, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk

---